Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1374 | **DATE** | 1/3/2003 |
| **CASE TITLE** | Certain Underwriters at Lloyd's London vs. BCS Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Petitioners' motion to confirm the arbitration award [18-1] is granted. Respondent's motion to vacate portions of the award [22-1] is denied. Petitioners' request for post-award and pre-judgment interest is denied. The Court orders post-judgment interest on the panel's award of $4,816,769.00 to the Petitioners. This case is hereby dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN - 6 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 32 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | CLERK | | |
| | | 03 JAN -3 PM 4:27 | date mailed notice | |
| RO | courtroom deputy's initials | Date/time received in Central Clerk's Office | mailing deputy initials | |



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON WHO PARTICIPATED IN SYNDICATES 47, 219, 227, 376, 490, 506, 529, 590, 672, 727, 807, 923, 947, 991, 994, 1003, 1027, 2003, 2027, 2227, 2376, 2490, 2506, 2591, 2923, and 2947 and UNIONAMERICA INSURANCE COMPANY, LIMITED, <br><br> Petitioners, <br><br> v. <br><br> BCS INSURANCE COMPANY, <br><br> Respondent. | No. 01 C 1374 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Petitioners Certain Underwriters at Lloyd's, London who participated in Syndicates 47, 219, 227, 376, 490, 506, 529, 590, 672, 727, 807, 923, 947, 991, 994, 1003, 1027, 2003, 2027, 2227, 2376, 2490, 2506, 2591, 2923 and 2947 ("Underwriters") and UnionAmerica Insurance Company, Limited ("UnionAmerica") (collectively "Reinsurers") seek confirmation of an arbitral award arising out of a dispute with BCS Insurance Company ("BCS"). BCS, in turn, seeks to vacate portions of the arbitrators' June 27, 2002 award, primarily alleging that the panel exceeded its powers. For the reasons set forth below, the Court grants Reinsurers' motion to confirm the arbitration award, (R. 18-1), and denies BCS' motion to vacate portions of the award, (R. 22-1).

**RELEVANT FACTS**

This dispute arises out of a series of reinsurance agreements between BCS and Reinsurers.[1] Under the agreements, Reinsurers provided BCS with coverage for 100% of the risk of certain warranty contracts administered by Insurance Specialists, Inc. ("ISI"). Reinsurers allege that because BCS failed to oversee ISI, which improperly administered the warranty program, the fund intended to cover all the claims was exhausted, leading Reinsurers to pay out millions of dollars. Eventually, Reinsurers stopped payment under the agreements when they allegedly discovered that BCS made misrepresentations in obtaining the reinsurance coverage. Reinsurers argued that the reinsurance agreements should be rescinded or that BCS alone should be responsible for ISI's maladministration, and demanded arbitration. BCS sought to resolve the dispute in Missouri state court, but this Court compelled arbitration on March 29, 2001, in accordance with the parties' agreement.[2] (R. 11, Mar. 29, 2001 Order.)

On April 15, 2002, the parties began an eight-day hearing in Chicago, Illinois before a three-person panel of arbitrators with extensive experience in the reinsurance industry. Testimony addressed both the Reinsurers' rescission claim as well as their maladministration

---

[1] According to Petitioners' motion to compel arbitration, Underwriters are a group of underwriting syndicates whose participants include citizens of the United Kingdom, UnionAmerica is an United Kingdom corporation with its principal place of business in the United Kingdom and BCS is an Ohio corporation with its principal place of business in Chicago, Illinois.

[2] In relevant part, the arbitration provision states:
"[T]he arbitration tribunal will apply the laws of said agreed location as the proper law of this agreement and of the Reinsurance to which this agreement is attached. . . . The arbitrators will not be obliged to follow judicial formalities or the rules of evidence except to the extent required by the state law of the site of the arbitration. Further, the arbitrators will interpret this Agreement according to the usual and customary practice of the reinsurance business." (R. 23, BCS Exs., Ex. 9.)

2

claims. Reinsurers offered the testimony of accountant Richard Larry Johnson to support their maladministration claims; BCS did not call an expert witness to respond to Johnson's testimony. On the fourth day of the hearing, the Panel denied the Reinsurers' request for recission. Thus, at the close of the hearing, the Panel had only to decide the maladministration claims. The Panel requested post-hearing briefing on issues including "the question of ISI and whose agent ISI was." (R. 27, Pet'rs. Mem., Ex. C, Hr'g Tr. at 2059.) In their post-hearing brief, Reinsurers discussed the law of agency with reference to the Restatement (Second) of Agency, caselaw from Indiana, New Jersey, Illinois and the United Kingdom as well as industry custom. (R. 27, Pet'rs. Mem., Ex. B, Post-Hr'g Br. at 4-5, 10-22.) BCS too discussed the law of agency in its post-hearing brief, citing general propositions of law, the Restatement, caselaw from Tennessee, Oregon and other states as well as appealing to "business fairness." (R. 23, Ex. 5, Post-Hr'g Br. at 13-22.)

On June 27, 2002, the panel issued its decision, which in relevant part, denied Reinsurers' recission claim and granted Reinsurers' request for damages related to ISI's payment of uncovered claims, unreported claims, late reported claims, unreported premiums and lost investment income in the amount of $4,816,769.00. The panel noted that its decision "reflects the panel's evaluation of the relative responsibilities of the parties for the problems resulting from the Reinsurance Agreements." (R. 18, Pet. to Confirm, Ex. D, Decision, ¶ 5.) The panel retained jurisdiction "to resolve future disputes relating to the Reinsurance Agreements." (*Id.* at ¶ 8.) Currently before the Court are Reinsurers' petition to confirm the arbitration award and BCS' motion to vacate portions of the award.

**LEGAL STANDARDS**

Because not all parties to this dispute are United States citizens, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), implemented at Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, applies to the instant dispute. *See Jain v. Mere*, 51 F.3d 686, 689 (7th Cir. 1995). Pursuant to the Convention's implementing legislation, the reviewing court should confirm the arbitration award unless one of the grounds for refusal or deferral of recognition specified in Article V of the Convention is present. 9 U.S.C. § 207. In particular, Article V(1)(e) provides that an award should not be confirmed if it has been set aside under the law of the country where the award was made. Thus, the Convention allows for vacation of the award under domestic law, in this case the FAA.[3] *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20-23 (2d Cir. 1997); *Lander Co. v. MMP Invs., Inc.*, 107 F.3d 476, 478 (7th Cir. 1997).

Under section 10 of the FAA, the reviewing court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Yet, the traditional presumption is that a "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Geneva Secs., Inc. v. Johnson*, 138 F.3d 688, 692 (7th Cir. 1998) (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)). In

---

[3] The FAA also applies generally to actions brought under the Convention to the extent that the FAA does not conflict with the Convention. 9 U.S.C. § 208.

short, this Court's scope of review of the panel's decision is "grudgingly narrow." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1253 (7th Cir. 1994).

Throughout their briefs and when it appears to favor their argument, both parties also cite sections of the Illinois International Commercial Arbitration Act ("IICAA"). The IICAA, based on the United Nations Commission on International Trade Law (UNCITRAL) Model Law on International Commercial Arbitration, became effective in 1998. *See* 710 ILCS 30/1-1 *et seq*. It covers international commercial arbitrations like the present one that are held in Illinois and subject to an agreement between the United States and another country. 710 ILCS 30/1-5. Even though federal law is not meant to exclusively govern arbitration, see *Volt Info. Scis., Inc. v. Bd. of Trs. of Stanford Univ.*, 489 U.S. 468, 477 (1989), the Illinois General Assembly altered or disregarded the UNCITRAL Model Law to make it conform with federal arbitration law. *See Illinois Enacts International Commercial Arbitration Act*, 10 World Arb. & Mediation Rep. 4 (Jan. 1999). Thus, the IICAA is essentially a gap-filling law.

## ANALYSIS

BCS seeks to vacate paragraphs five and eight of the panel's decision under § 10(a)(4) of the FAA. 9 U.S.C. § 10(a)(4). BCS argues that paragraph five awarding over $4,000,000.00 in damages to Reinsurers should be vacated because: (1) it is an indefinite award incapable of enforcement; (2) the award was based on a damages opinion inadmissible under Illinois law; and (3) the panel exceeded its authority by making a "rough justice" compromise and not adhering to Illinois contract law. Reinsurers in turn respond that: (1) the award is a definite one based on the claims submitted to the panel; (2) under Illinois law the panel had the power to admit any evidence; and (3) the panel did not make a compromise decision, and BCS waived its right to

argue for the application of the "strict rule of law." 710 ILCS 30/25-5(c). BCS also seeks to vacate paragraph eight, in which the panel retained jurisdiction over future disputes relating to the Reinsurance Agreements.

First, BCS argues that the monetary award to Reinsurers in paragraph five is indefinite because Reinsurers have ongoing contractual payment obligations to BCS against which the award should be offset. As such, BCS urges the Court to view the award in paragraph five as a credit against the $2 million that Reinsurers allegedly owe BCS, and not as a lump sum payable to Reinsurers. This Court, however, can only vacate an award on the grounds of indefiniteness if it is not sufficiently clear and specific enough to be enforced. *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 226 F.3d 645, 650 (7th 2001). In other words, we must find that the arbitrators "left unresolved a portion of the parties' dispute." *Id.* at 651.

BCS' claim of indefiniteness fails because the panel's decision resolved the claims submitted to the panel. Reinsurers and BCS' post-hearing briefs clearly set out the relief requested by each party. Specifically relevant to the instant dispute, BCS requested that the panel reiterate its denial of Reinsurers' recission claim and grant or deny Reinsurers' damages claims based on ISI's maladministration; Reinsurers' requested specific damages amounts for ISI's maladministration. The panel's resulting decision addressed the concerns enumerated by the parties, denying the recission claim and delineating the parameters of the coverage under the Reinsurance Agreements, as well as awarding Reinsurers over $4 million for ISI's maladministration. In short, the monetary award clearly resolved the parties' dispute over ISI's maladministration, and the remainder of the panel's decision made clear that the Reinsurance Agreements remain in effect subject to the limitations in the decision. Trusting that the parties

will abide by the decision and their contractual obligations to one another, we will not reinterpret the award as a credit. The award is clear, final and definite on the issues submitted to the panel, and vacation under the grounds of indefiniteness would be beyond the scope of our review.

Second, BCS also argues that this Court should vacate the monetary award in paragraph five because the panel exceeded its powers by basing the award on evidence inadmissible under Illinois law. To support this argument, BCS cites a portion of the arbitration provision: "The arbitrators will not be obliged to follow judicial formalities or the rules of evidence except to the extent required by the state law of the site of arbitration." (R. 23, BCS Exs., Ex. 9 at 8.) BCS' contention that this provision requires the arbitrators to apply Illinois evidence law misinterprets the clause. The provision clearly states that the arbitrators need not follow the rules of evidence unless the state law governing arbitration requires that the arbitrators apply them. As Reinsurers contend, BCS has not cited any Illinois law that requires arbitrators in Illinois to follow the rules of evidence. In fact, the IICAA, which BCS cites throughout its briefs, provides that arbitrators may "determine the admissibility, relevance, materiality and weight of any evidence." 710 ILCS 30/20-10. BCS essentially disagrees with the panel's evidentiary decisions and thus is attempting to frame the issue as a basis for vacation under § 10(a)(4). Evidentiary determinations are within the discretion of the arbitrators, however, and "[a] question as to the sufficiency of the evidence before the arbitrator simply does not trigger the review powers of this court." *Eljer*, 14 F.3d at 1256 (rejecting party's argument that lost profits award should be vacated because it was based on extrapolation).

Third, BCS argues that this Court should vacate paragraph five of the award because the panel exceeded its authority by making a "rough justice" compromise and not adhering to Illinois

contract law. BCS bases its argument on a provision of the IICAA that provides: "The arbitral tribunal shall decide according to what is just and good ("ex aequo et bono") or according to equity and good conscience (as "amiable compositeur") rather than by the strict rule of law only if the parties have expressly authorized it to do so." 710 ILCS 30/25-5(c). BCS argues that the panel made an equitable determination in paragraph five when the Agreements did not specifically allow for one. Reinsurers, in turn, argue that the panel made a decision in accordance with the law, custom and practice of the reinsurance industry, and that BCS waived applicability of the "strict rule of law" standard in the IICAA. 710 ILCS 30/25-5(c).

As a threshold matter, the Court is not convinced that the panel made an equitable decision in paragraph five. BCS argues that the language of the decision—"Petitioner's request for relief . . . is granted to the extent of $4,816,769.00, which reflects the panel's evaluation of the relative responsibilities of the parties for the problems resulting from the Reinsurance Agreements"—evidences a "rough justice" compromise. (R. 18, Pet. to Confirm, Ex. D, Decision.) This language, however, does not persuade the Court that the panel ignored the rule of law. In fact, the preface of the decision also states that the panel based its decision on its review of the post-hearing briefs, which included discussion of the law of agency, and the material and information provided at the hearing. We will not over-scrutinize the panel's language and leap to the conclusion that it exceeded its powers in formulating the award. *See Enterprise Wheel*, 363 U.S. at 598.

Even if we agreed with BCS that the panel made an equitable decision in paragraph five, we conclude that BCS waived application of the "strict rule of law" standard. BCS now argues that the panel made a rough justice determination and did not adhere to Illinois contract law as

8

directed by the Agreements. *(See* R. 22, Mot. to Vacate at 11-12.) The Court's review of the post-hearing briefs, however, evidences that neither party relied solely on Illinois law in discussing ISI's agency. The parties cited the Restatement (Second) of Agency and the caselaw of various states. Furthermore, Reinsurers appealed to the industry custom, as permitted by the arbitration provision, and BCS appealed to "business fairness." (R. 23, BCS Exs., Ex. 5 at 22.) If the parties intended to be bound solely by Illinois law, they should have explicitly stated so in their briefs to the panel. Indeed, given that BCS itself made an argument appealing to "business fairness," its present appeal for a vacation under the "strict rule of law" provision in 710 ILCS 30/25-5(c) seems rather disingenuous. Thus, even if we view the panel's decision as an equitable one, we conclude that by making arguments under the law of other states, the general principles of the Restatement, industry custom and "business fairness," the parties waived application of the IICAA's "strict rule of law" standard, which BCS argues calls for the strict application of Illinois law. *See Malnove Inc. of Neb. v. Hearthside Baking Co., Inc.*, 951 F. Supp. 151, 152 (N.D. Ill. 1997) (holding that party cannot try case under Illinois law and then argue post-judgment that the law of another state should apply); *Yates v. Doctor's Assocs. Inc.*, 549 N.E.2d 1010, 1015-16 (Ill. App. Ct. 1990) (holding that parties mutually waived Connecticut choice of law provision when they based their arguments on Illinois law).

Finally, we reject BCS' argument that paragraph eight, in which the panel retained jurisdiction over future disputes, should be vacated. BCS, in fact, sought this very relief in its post-hearing brief. (See R. 23, BCS Exs., Ex. 5 at 36.) Additionally, as argued by Reinsurers, the doctrine of *functus officio* is not applicable because the retention provision provides that the

panel will retain jurisdiction over future disputes, not disputes already decided. Therefore, BCS' arguments to vacate paragraph eight fail.

## CONCLUSION

For the reasons set forth herein, the Court grants Reinsurers' motion to confirm the arbitration award, (R. 18-1), and denies BCS' motion to vacate portions of the award, (R. 22-1). The Court, in its discretion, denies Reinsurers' request for post-award, pre-judgment interest, but orders post-judgment interest on the panel's award of $4,816,769.00 to Reinsurers. The Clerk of the Court is instructed to enter judgment in favor of Reinsurers and against BCS in accordance with Federal Rule of Civil Procedure 58.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: January 3, 2003